UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VICTOR MANUEL MEDINA, | ) ) ) | |
| Petitioner, | ) | |
| v. | ) | Civil No. 12-12399-JLT |
| MICHAEL CORSINI, Superintendent Massachusetts Treatment Center, | ) ) ) ) | |
| Respondent. | ) ) | |

REPORT AND RECOMMENDATION ON
<u>PETITION FOR WRIT OF HABEAS CORPUS</u>

March 4, 2014

SOROKIN, C.M.J.

      Petitioner Victor Manuel Medina has filed a pro se petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. Nos. 1, 1-3.[1] Medina challenges a Massachusetts state court decision deeming him a sexually dangerous person subject to civil commitment. Doc. No. 1-3 at 1. Respondent has opposed the petition. Doc. No. 43. For the following reasons, I recommend that the Court DENY the Petition.

I.      BACKGROUND

      Medina was convicted of open and gross lewdness against a minor in 2000, then pleaded guilty to four counts of indecent assault and battery on a child under fourteen in 2007. Doc. No. 1 ¶¶ 3-4; Doc. No. 43 at 2. In 2008, while Medina was serving his sentence following the 2007 plea, the Commonwealth petitioned to have him civilly committed as a sexually dangerous

---

[1] Medina initially filed a document styled more as a brief than a habeas petition. Doc. No. 1. In response to a motion by Respondent seeking a more definite statement of Medina's claims, and at the Court's direction, Medina supplemented his initial filing with the required form for submissions pursuant to § 2254. Doc. No. 1-3; see Doc. Nos. 10, 12, 17.

person.  Doc. No. 1 ¶ 5; Doc. No. 43 at 2.  After a bench trial including testimony by several expert witnesses, the state court allowed the Commonwealth's petition in June 4, 2010.  Doc. No. 1 ¶¶ 14, 16; App. at 11.  The experts were in substantial conflict.  Two of the Commonwealth's experts diagnosed Medina with a Personality Disorder, Not Otherwise Specified and a general lack of control of sexual impulses.  App. at 100, 114-115.  Notably, only one of these two experts examined Medina, a fact that the non-examining expert acknowledged undermined her opinion, Trial Tr., May 21, 2010, at 32, 36, and a fact referred to by the trial judge sitting as finder of fact, App. at 166.  The Commonwealth's third expert, as well as the two defense experts, did not diagnose Medina with a Personality Disorder.  Trial Tr., May 21, 2010, at 106-07; Trial Tr., May 24, 2010, at 13, 16, 45.  Of these five experts, two experts—those diagnosing Medina with a Personality Disorder—opined that Medina is likely to engage in sexual offenses if not confined to a secure facility.  Trial Tr., May 21, 2010, at 25, 73.  The trial judge made his determination of sexual dangerousness after crediting and finding persuasive the expert opinions of these two experts.  App. at 168-69.

Medina filed a timely, counseled appeal raising a hearsay argument, which he has now abandoned, and the following due process issue:

> Whether the civil commitment of the defendant, based on a diagnosis of "personality disorder not otherwise specified, with anti-social traits," violated federal and state principles of due process, in that the diagnosis was so devoid of content that it failed to distinguish between a dangerous sexual offender subject to civil commitment and other dangerous persons who are more properly dealt with exclusively through criminal proceedings.

App. at 22.

Within his brief explicating this argument, Medina advanced the following contentions: (1) that a diagnosis of Personality Disorder, Not Otherwise Specified is "so devoid of content"

that it violates due process, App. at 29-31; and (2) that, in violation of due process principles, the witnesses upon which the trial court relied failed to demonstrate that Medina suffers from the type of pervasive conduct disorder required for commitment, App. at 31-41, and the trial court relied entirely on Medina's criminal misconduct during a ten-year span to establish the existence of a personality disorder, App. at 41-51.

On April 27, 2012, the Massachusetts Appeals Court affirmed the trial court. Commonwealth v. Medina, No. 11–P–694, 81 Mass. App. Ct. 1131, 2012 WL 1448859, at *1 (Apr. 27, 2012) (unpublished table decision).  The Appeals Court rejected the Petitioner's contention that the evidence or experts were insufficient to support the judgment on the merits, finding that there was no error in the trial judge's findings or analysis.  Id. at *1-2.

Regarding Medina's substantive due process claim, the Appeals Court wrote:

We find no merit in the defendant's claim, raised for the first time on appeal, that his adjudication as a sexually dangerous person violated his substantive due process rights. Even assuming this claim were raised properly, the judge's decision, and the statute he applied, appropriately "coupled proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.'" Kansas v. Hendricks, 521 U.S. 346, 358 (1997).

Id. at *2 n.3.

In a late application seeking further appellate review, Medina raised only one claim:

Whether, in affirming the judgment of the trial court, the Appeals Court's conclusion that a showing of prior recidivist sex offending is, by itself, sufficient to warrant civil commitment as a sexually dangerous person violates substantive due process.

App. at 254.  In explicating this one basis for review, Medina's brief reiterated the contentions that, in violation of due process principles, the witnesses upon which the trial court relied failed to demonstrate that Medina suffers from the type of pervasive conduct disorder required for civil

3

commitment and that the trial court relied entirely on Medina's criminal misconduct during a ten-year span to establish the existence of a personality disorder. App. at 255-57. Although the Massachusetts Supreme Judicial Court ("SJC") accepted Medina's untimely application, App. at 16, it denied review on June 27, 2012. App. at 278.

Presently,[2] Medina advances one claim, which he describes as:

> The conclusion that a showing of prior recidivist Sex Offending is, by itself, sufficient to warrent [sic] Civil Commitment under M.G.L. c. 123A as a Sexually Dangerous Person violates Substantive Due Process.

Doc. No. 37 at 1; see also Doc. No. 1 ¶¶ 66-70 (same); Doc. No. 48 at 12-14 (same).

## II.  DISCUSSION

Medina's petition first poses the question of what, if any, of his arguments are properly before this Court. The Appeals Court determined that Medina failed to raise his "substantive due process" argument in the trial court thus precluding appellate review. That the Appeals Court, as an alternative holding, rejected the claim on the merits does not waive the adequate and independent state ground doctrine. Boutwell v. Bissonnette, 66 F. Supp. 2d 243, 245 (D. Mass. 1999) (citing Harris v. Reed, 489 U.S. 255, 264 n.10 (1989)). Medina has not established, nor even attempted to establish, the cause and prejudice required to excuse his procedural default as to this argument. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Hodge v. Mendonsa, 739 F.3d 34, 43 (1st Cir. 2013). Based on the foregoing, Respondent argues that the Court should reject Medina's petition based on procedural default. The issue, however, is not so clear.

The Appeals Court reasonably construed Medina's appeal as raising the question of

---

[2] Previously, Medina also advanced an unexhausted argument regarding the admission of hearsay evidence. See Doc. No. 1-3 at 7. He dropped that claim, however, in response to Respondent's Motion to Dismiss. See Doc. No. 34 at 1.

whether the evidence presented sufficed to establish the essential elements of sexual dangerousness. Medina, 2012 WL 1448859, at *1. While nowhere in their analysis of this question did the Appeals Court cite federal case law or even refer to due process, it did cite several cases which consider the question of how much and what type of expert testimony does or does not suffice to support the commitment of a person as sexually dangerous. Id. (citing Commonwealth v. Cowen, 897 N.E.2d 586 (Mass. 2008); Commonwealth v. Boyer, 812 N.E.2d 1235 (Mass. App. Ct. 2004)). In light of the foregoing, I construe, as the Appeals Court also appears to have done, Medina as having raised both a categorical due process argument—that the sort of evidence relied upon can never justify civil commitment—and a contextual due process argument—that the evidence presented in his trial was insufficient to support civil commitment as to him. See Young v. Murphy, 615 F.3d 59, 65-67 (1st Cir. 2010).[3] Medina procedurally defaulted the categorical due process claim and it is thus not properly before this Court. Medina did not default the contextual due process claim, and therefore I proceed to consider it.

A.   Legal Standards

Federal district courts may not grant a writ of habeas corpus unless they find that the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an

---

[3] The Appeals Court apparently used the concepts of procedural and substantive due process to distinguish between these two arguments. See Medina, 2012 WL 1448859, at *2 n.3. The First Circuit has utilized the labels of categorical and contextual due process claims in an analogous circumstance to distinguish between these types of claims. Young, 615 F.3d at 65-67. Here, I have followed the example of the First Circuit.

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Pursuant to this provision, state court decisions merit substantial deference. As the Supreme Court repeatedly has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 131 S. Ct. 770, 786 (2011); accord Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). If a state court's decision "was reasonable, it cannot be disturbed" on habeas review. Hardy v. Cross, 132 S. Ct. 490, 495 (2011) (per curiam). When applying this strict standard, I must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003).

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). For a habeas petitioner to prevail under this standard, the state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court. Id. at 404-05; see Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). The state court is not required to cite, or even have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam).

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts

of the particular state prisoner's case." Williams, 529 U.S. at 407-08.  When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable."  Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply.  Id. at 407.

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief.  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc).  Rather, relief is available only where a state court's "determination was unreasonable—a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam) (emphasizing that a habeas court "may not overturn a state court decision . . . simply because the federal court disagrees with [it]"); Richter, 131 S. Ct. at 786-87 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement").

B.  Contextual Due Process Claim

Medina's contextual due process claim challenges the sufficiency of the evidence supporting the finding that he is a sexually dangerous person under the relevant statute. Specifically, Medina challenges the state court's findings that 1) he suffers from a mental abnormality or personality disorder and 2) that mental condition makes it likely that he will engage in sexual offenses if not confined to a secure facility.

As to the existence of a mental abnormality or personality disorder, the trial court reviewed the statutory definitions of both mental abnormality and personality disorder. App. at 167-68. It then reviewed the testimony of the five experts who testified on this point. Id. at 167-69. After noting disagreement among the experts, the trial court credited the testimony of two of the experts, Dr. Quinones and Dr. Schaefer, who concluded that Medina suffers from a Personality Disorder, Not Otherwise Specified, relying, in part, upon Medina's past sexual offenses, non-sexual offenses, and civil restraining orders brought against him.[4] Id. The trial judge noted that the nature of his criminal conduct not only supported the conclusion that he suffered from a personality disorder but also the conclusion that the diagnosis met the statutory definition of that term. Id. at 169. The court then concluded that the Commonwealth had established this element beyond a reasonable doubt. Id.

As to the likelihood of Medina engaging in sexual offenses if not confined to a secure facility, the trial court again noted the disagreement among the experts. Id. The court reviewed the method used by four of the experts to measure likelihood of reoffending and considered the mitigating factors offered by Medina's experts that suggested that the likelihood was limited. Id.

---

[4] Medina complains that the trial court only considered his prior criminal convictions in finding the existence of the requisite mental condition and establishing the risk of reoffending. Doc. No. 48 at 12. The trial court, however, also considered civil restraining orders brought against him and focused on the conduct the orders and convictions represented rather than the fact of those adjudications. App. at 168. Even if the trial court had considered only conduct that resulted in criminal convictions in coming to its determination, it is not clear that Federal law, as determined by the Supreme Court, prohibits that practice. See Kansas v. Crane, 534 U.S. 407, 413 (2002) (noting that the Court is wary of imposing "bright-line rules" for how states must meet their burden in civil commitment proceedings); cf. Kansas v. Hendricks, 521 U.S. 346, 370 (1997) (approving of the use of prior convictions "for evidentiary purposes to determine whether a person suffers from a 'mental abnormality' or 'personality disorder'" while addressing a Double Jeopardy challenge to a similar statute).

at 169-70.  The judge, again crediting two of the experts, found that the risk factors outweighed any mitigating factors and found beyond a reasonable doubt that Medina was likely to engage in sexual offenses if not confined to a secure facility.  Id. at 170.

The Appeals Court, reviewing the findings of the trial court, rejected the contention that there was not sufficient evidence as to these elements and noted support for the findings, despite the expert disagreement, in the testimony of the two experts credited by the court, Medina's past conduct, and his personal attributes.  Medina, 2012 WL 1448859, at *1-2.  In so doing, the Appeals Court declined Medina's invitation to disturb the trial judge's assessment of the relative credibility of the expert witnesses.  Id.

Clearly established federal law, as determined by the Supreme Court, requires "a finding of dangerousness either to one's self or to others . . . coupled . . . with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality'" in order to justify civil commitment.  Kansas v. Crane, 534 U.S. 407, 409 (2002) (quoting Kansas v. Hendricks, 521 U.S. 346, 357-58 (1997)) (internal quotation marks omitted).  In addition, findings in such proceedings must be made by clear and convincing evidence or a more exacting standard.  Addington v. Texas, 441 U.S. 418, 433 (1979).

Given the testimony of the two experts and the facts of Medina's personal and criminal history, the decision of the Appeals Court regarding the sufficiency of the evidence supporting both the existence of a personality disorder and the likelihood that Medina would reoffend cannot be said to be contrary to, or an unreasonable application of, this clearly established Federal law, nor was it based on an unreasonable determination of the facts in light of the

evidence.[5] See 28 U.S.C. § 2254(d); Young, 615 F.3d at 66-67. In particular, the First Circuit instructs that the "manner in which the [mental abnormality] 'manifests itself in the individual' [] will determine whether a particular commitment decision meets the requirements of the due process clause." Young, 615 F.3d at 66 (quoting Brown v. Watters, 599 F.3d 602, 614 (7th Cir. 2010)). The trial judge, whose analysis the Appeals Court affirmed, followed that method. The trial judge closely examined and considered the facts and the opinions of the experts. In addition to the conduct underlying his criminal convictions, the two experts cited by the trial judge considered Medina's "tumultuous" and "violent' conduct with domestic partners and the "diverse" nature of his victims. App. at 98, 114. One expert concluded that Medina "tends to view others as objects to satisfy his needs." App. at 98. The other expert specifically found Medina to meet both the Diagnostic and Statistical Manual of Mental Disorders (DSM) and statutory definitions of personality disorder. App. at 114-15. These facts support the conclusions drawn by the state court.

Regarding the need for confinement, the trial judge found that "[a]ll of the experts except Dr. Plaud used an empirically developed actuarial tool . . . [which] places the [petitioner] in a category of offenders with a moderate to high risk of sexually re-offending." App. at 169-170. He acknowledged certain mitigating factors in this case, but he ultimately found several facts which supported his conclusion that the risk factors sufficiently outweighed the mitigating factors, including: (1) "the rate of decline for extra-familial child molesters like the [petitioner] is less pronounced [with age] than for other sex offenders"; (2) petitioner "has reoffended while on

---

[5] That the evidence, in the form of conflicting expert opinions, may have permitted different conclusions does not undermine the conclusions reached by the trial judge where, as here, they are sufficiently supported in the record.

probation in the past and his denial of the governing sex offenses will make it difficult for him to succeed in sex offender treatment"; (3) despite an absence of disciplinary reports while incarcerated, petitioner "acknowledged a consensual sexual relationship with another resident[, which constitutes] . . . a violation of institutional rules"; and (4) a history of substance abuse that one expert opined "disinhibit[s] sexual offending." Id. at 170. In light of the foregoing, Medina has not established that this is the case of a "dangerous but typical recidivist convicted in an ordinary criminal case," Crane, 534 U.S. at 413, nor has he otherwise established error under the governing legal standards.

III.   CONCLUSION

For the foregoing reasons, I respectfully recommend that Medina's petition for a writ of habeas corpus be DENIED.[6]

       /s/ Leo T. Sorokin
Leo T. Sorokin
Chief U.S. Magistrate Judge

---

[6] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72; 28 U.S.C. § 636(b); Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to file timely objections will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).